Amzi Bradshaw, Administrator, v. Robert F. Mayfield.

It would seem that where an Administrator sues to assert a right which is good in favor of creditors, but not in favor of heirs, it will not be presumed, in the absence of any allegation or proof, that there are creditors; but such fact ought to be alleged, and if put in issue, proved.

Verbal sales and gifts between husband and wife ought not to be admitted, (even as between their heirs), unless on clear and satisfactory proof that the property was divested out of the vendor or donor, and vested in the vendee or donee.

See this case as to errors in instructions, rendered immaterial by consideration of the facts.

A schedule of her separate property, filed by the wife after her husband's decease, was admitted in this case; but there was no ruling in this Court on the subject.

Where the wife claims property before her husband's death, which property is in the husband's possession as usual in the case of husband and wife, and the husband dies and the wife administers on his estate, the fact of administration by her, does not deprive her altogether of the right to claim that she possessed said property adversely to the estate while administratrix; but it must be notorious that she makes such individual, adverse claim, and be brought home to the knowledge of those interested, or the circumstances must be such that it might have been known, had any degree of the diligence which persons are required to exercise in their own affairs, been used; but as

against minor heirs (especially where they have no guardian,) the possession could not be deemed as adverse.

Our Courts will not take notice without proof, that the common law prevails in another of the United States ; it requires but slight proof to establish such fact, and there are various modes in which, when once alleged, it may be established.

Appeal from Ellis.   Tried below before  the  Hon. Nat. M. Burford.

Suit by appellee, administrator *de bonis non* of Sutherland Mayfield, against  the  appellant, administrator of Sarah Mayfield, wife of  said Sutherland, to recover a slave  named  Randle.

The plaintiff proved, by admission  of  defendant, that said Sutherland and  Sarah were married in Tennessee in 1837 or 1838, both having been  previously married, and  both having children  by  their  former  marriages ; plaintiff  son  of  said Sutherland by former marriage, about  thirty years  old ; said Sutherland died in  Ellis county, then Navarro, in  the  fall of 1848 ; said Sarah was  appointed his administratrix shortly after his death ; in March, 1854, she was removed, and plaintiff appointed ; Sarah died  intestate in ——— 1854 ; defendant appointed her administrator.

Plaintiff then called a witness who  testified  that  he  knew the boy Randle ; was in possession and control of said Sutherland during  his life  time, until  his  death ; never heard any one  else claim  said  boy, until  after said Sutherland's death, and then said Sarah set up a claim to him.

Another witness for plaintiff was well acquainted with  the deceased parties in Ellis county, for  several  years before  the death of said Sutherland ; same testimony as first witness.

Another witness for plaintiff had known the deceased parties for  thirty  years ;  knew  the boy Randle ;  said Sutherland owned and raised said boy.

Defendant then called a witness who testified that in 1846 or 1847, he proposed to said Sutherland to swap a negro girl for the boy Randle, and he replied that the boy belonged to said Sarah, and probably she would trade with him ; witness went to said Sutherland's house to try to make the trade ; said Sutherland said, " Here's the old lady, you and her for it ;" but said Sarah would not part with the boy ; said Sutherland told witness that he sold a negro girl belonging to said Sarah, and he purchased the boy Randle for her in lieu of the girl ; the boy was in the possession of the family ; this conversation was in Ellis county.

Another witness testified to another similar incident, and same declarations of said Sutherland, in Texas also.

Defendant then introduced a schedule of her property filed in the office of the clerk of the County Court by said Sarah, in which she calls herself consort of the late Sutherland Mayfield, deceased ; it embraced the boy Randle only, and derived her title same as stated by defendant's witnesses. It was filed in the office of the clerk of the County Court, February 10th, 1854. The introduction of the schedule was objected to ; objection overruled, and plaintiff excepted. It was admitted that the said Sarah had not inventoried the boy Randle as administratrix of said Sutherland.

Plaintiff then called a witness who testified " that the sale mentioned by defendant's witnesses" took place in Tennessee, before the parties emigrated to Texas ; that the boy Randle was worth between $1000 and $1200 ; another witness proved the value of the boy's services. This is all the evidence.

It appeared in the usual manner, that the Judge instructed the jury, without request, as follows :

Any sale of the boy Randle by the husband Sutherland Mayfield to the wife Sarah Mayfield, though perhaps good between the parties and their heirs, is a nullity as to third persons.

If the proof shows that the defendant Bradshaw, and his

intestate, Sarah Mayfield, had been in the peaceable, actual adverse possession of the boy for three years before the filing of the petition in this cause, then you will find for the defendant.

The jury will look to all the facts of the case, to determine whether the possession of Mrs. Mayfield was as trustee for her husband's estate, or in her own right.

If the proof shows that after the death of her husband, Mrs. Mayfield held possession of the negro, not in her own right, but as the head of the family, as administratrix, or in any other trust character, then such possession would not be such an adverse possession as would be available under the statute of limitations. Should you find for the plaintiff, you will also find the value of the negro, and amount of his hire since the commencement of suit.

The statement of facts, at the conclusion thereof, contained a clause, as follows :

It is admitted also, that the Court charged the jury among other things, that, if they found that Sutherland and Sarah Mayfield were married in the State of Tennessee, that the common law prevailed there, and that the property of the wife, that she then held or held before their emigration to Texas, became that of the husband.

Verdict for the plaintiff, assessing the value of the slave at eleven hundred dollars, and the hire at the rate of $175 per year. Remission of one hundred dollars of the value of the slave, it only being alleged at one thousand dollars in the petition ; judgment accordingly, computing hire from the commencement of the suit. Motion for new trial overruled, &c.


*A. Bradshaw,* for himself.

*J. W. Berry* and *E. H. Tarrant,* for appellee.

HEMPHILL, CH. J. This was an action by the appellee as administrator *de bonis non* of Sutherland Mayfield, the husband, against the administrator of Sarah Mayfield, the wife, for the recovery of a slave.

The judgment was for the plaintiff, and this is questioned on the several grounds that the Court erred,

In the charge to the jury.

In rendering judgment upon the verdict ; and,

In refusing motion for a new trial.

The first objection under the first assignment, is to the proposition by the Court, that the sale of the negro in question, by the husband to the wife, though perhaps good between the parties and their heirs, is a nullity as to third persons. The appellant complains, and with some justice, that the charge as to the effect of the deed, as against third persons, was a matter extraneous to the cause, there being no allegation in the pleadings setting up the rights of creditors, or that it was made to defraud them. The question was as to the fact of sale, and the jury should have been instructed, that if from the evidence, they found such sale, it was valid between the parties and their representatives. This proposition is sound, whether tested by the Common, by the Texas, or the Spanish law, in relation to marital rights. At Common Law, such sale between husband and wife would, it is believed, be binding without the interposition of a trustee, notwithstanding the ancient doctrines to the contrary ; if without consideration, it would be valid as a gift. Under the Laws of Texas and those of Spain, a married woman being a distinct person from her husband with regard to their estates, such sales would have been valid ; and if a gift, it would even under Spanish Law be valid, subject to some exceptions, the principal of which is its liability to revocation by the donor during his life ; but if not so revoked, it became unimpeachable. How far the casual remark that the sale was a nullity as to third persons, and the suggestion of doubt as to its validity between the parties, may

have misled the jury, might be somewhat difficult to estimate. The jury may not have believed that there was any sale by the husband to the wife, as is claimed. If so, the instruction could not have operated to the injury of the appellant. The evidence of such sale or gift was not conclusive—verbal sales and gifts between husband and wife ought not to be admitted, unless on clear and satisfactory proof that the property was divested out of the vendor or donor, and vested in the vendee or donee.

The appellant also objects to the second paragraph of the charge, to the effect that the jury should find for the defendant, if he and his intestate had been for three years in the actual, peaceable, adverse possession of the slave. The appellant insists that two years would be sufficient to vest the right, as against the plaintiff. But this error, if it be such, is immaterial in this case. The defendant and his intestate had been in adverse possession for more than three years ; or, if this commenced only from the filing of the schedule, as might be contended, though we do not admit such position, their possession was for less than one year ; so that whether the charge was for three or for two years was not material.

The appellant, in argument objects to the further charge, that if Mrs. Mayfield, after the death of her husband, held possession of the negro not in her own right but as the head of the family, as administrator or in any other trust character, such possession would not avail her under the statute of limitations. In a previous portion of the charge, the Court had instructed the jury, that they must look to all the facts of the case to determine whether the possession of Mrs. Mayfield was as trustee for her husband's estate or in her own right. These charges, when considered together, must be regarded as a fair exposition of the law, although there is some vagueness with reference to the facts, in the idea that Mrs. Mayfield may have held as head of the family or in some other trust character than that of administrator. The point on which the Court

was instructing the jury, was as to the character of Mrs. Mayfield's possession ; and the general effect of the charges was, that if they found it was held for herself it was adverse ; if not, it was not adverse ; and they should determine from all the circumstances, whether she was holding in her individual or in a trust capacity. The fact of administration by her did not deprive her altogether of the right to hold property, claimed for the husband's estate, in her individual capacity. The presumptions would, *prima facie*, be in favor of the estate. The individual, adverse possession must be most notorious, brought home to the knowledge of those interested, or which might have been known had any degree of the diligence which persons are required to exercise in their own affairs been shown ; and as against minor heirs, (especially where they have no guardian,) the possession could not be deemed as adverse. An administrator cannot complain of this strictness, as a denial of rights allowed by law to persons claiming under an adverse possession. No one is compelled to assume administration ; and if it is taken, it must be with its restrictions against an adverse claim through mere possession. The fact that Mrs. Mayfield did not include the slave in the inventory, is a strong circumstance in her favor. The inventory is not conclusive, (Hart. Dig. Art. 1151,) but the omission is evidence at least that she was not claiming the slave as trustee for her husband's estate ; and if not, it can hardly be imagined that she was claiming in any other but her own right, especially when the evidence is that she claimed for herself. Under the facts and presumptions it could not be well presumed that she was holding as head of the family, or in any other trust but that of administrator. Upon the facts, she either held for herself or for the estate, and it was for the jury to find the capacity in which she did hold.

The fact of omission of the slave from the inventory has especial force as against adult heirs and creditors of an estate Under Art. 1150, they had an easy and speedy remedy for the

omission, by complaint to the Chief Justice, and on proof of property in the deceased, the slave would have been included in the inventory. Whether an adult heir should be allowed, under the guise of administration, to recover property to which his title as heir is barred by laches and limitations, is a serious question, and one which properly should be answered in the negative. This we do not intend to decide in the present attitude of the case. Under our system, it would not be impossible for an administrator to recover only such portion of the value of a slave or other article of property, as could be validly claimed by the heirs of the estate ; and if creditors and adult heirs can be excluded by their own laches, the portion recoverable would be the distributive shares due to the minors. But it would require proper pleadings and proper as well as sufficient proof to authorize such decree.

It is admitted in the statement of facts, that the Court, among other things, charged the jury that if they found that Sutherland and Sarah Mayfield were married in the State of Tennessee, that the Common Law prevailed there, and that the property of the wife which she there held or held before their emigration to Texas, became that of the husband. If the sale of the girl belonging to the wife by the husband, and the gift, or sale of the boy Randle to the wife to replace the girl, took place in Tennessee, this charge would exclude the wife from claiming the slave in any other light than that of adverse possession after the husband's death : the charge being to the effect that if the girl or boy, either, was the property of the wife in Tennessee, it became the property of the husband. The objection urged to the charge is, that it was not alleged in the pleadings, nor was it in proof, that the Common Law was in force in Tennessee. It is a general rule, that the laws of foreign and sister States must be alleged and proven as facts, before they can become the rule of decision ; and if not so established, the rights of parties must be determined by our own laws. Cowen & Hill in their Notes, vol. ii,

p. 330, say that many of the cases previously cited by them are direct authorities to show, that the laws of one State of the Union when sought to be used in the Courts of another, will not be judicially noticed, but must be proved ; and that it is hardly necessary to observe, that though this rule embraces the unwritten laws of the several States, as well as their written or Statute Laws, it applies to the latter with peculiar force. The rule is a corollary from the position that the several States, as to the effect of their respective legislation, are foreign to each other. In some of the States it is presumed that the Common Law prevails in certain other States, and, on a Common Law question, such law will be assumed to be the same as that of the State where the Court which is to adjudicate upon the matter, sits. (Cowen & Hill, 2 vol. p. 328 ; 10 Wend, 75, 78 ; 1 Mass. 103 ; 2 Id. 44; 1 Pick. 415, 417 ; Legg & Legg, 8 Mass. 9.)

This would be deciding, to a certain extent at least, by the law of the Forum ; for the Common Law as to the matter in controversy, might have a construction in the State where the trial is had, variant from that given to it in the State where the contract was made or the act done. It requires but slight proof to establish the fact that the Common Law prevails in a particular State; and there are various modes in which this fact, when once alleged, may be established. The practice has been, in this State, either to admit the fact, or establish it by proof, and we see no good reason to depart from the rule. And especially is the rule proper where marital rights are in question. Where one State presumes the Common Law is in force in another, on the subject of marital rights, it presumes further that the law is the same as in the State where the Court tries the cause. But the Common Law is not and never has been in force in this State, on the subject of marital rights. If the Common Law were admitted to be in force in Tennessee, we could not presume it to be the same there as here ; for here, on that subject, it never was of force. We

Bradshaw    v.    Mayfield.

cannot test it by our own laws, and there is great propriety in proving what the law is, by such evidence as is competent to establish the fact.   The appellee contends and cites authorities to show, that the sale or gift of the boy Randle to the wife, is invalid under the Common Law, without the interposition of a trustee.   If the Common Law were in force here, that question would perhaps have been decided by our own Courts, and if so, and we should presume the Common Law to prevail in Tennessee, we might, according to the rule adopted in New York, Massachusetts, &c., assume the law to be the same in Tennessee as in Texas.   But our laws will not admit of any such assumption, and we must of necessity receive proof of the existence and rule of the law in the foreign State.

We do not intend to admit that in Tennessee a gift or grant from the husband to the wife would be invalid without the interposition of a trustee ; and we do not deem it necessary to express any opinion as to what might be found in the decisions of that State relative to that point.

We are of opinion that there was error in the instruction that the Common Law was in force in Tennessee, and the effect of such law ; and it is ordered that the judgment be reversed and the cause remanded.

Reversed and remanded.