TURNER W. GILL, GUARDIAN, v. JACOB EVERMAN, GUARDIAN.

No. 944. Decided December 6, 1900.

**1. Guardianship—Laws of Sister State—Presumption.**

On an application under article 2753, Revised Statutes, for appointment, as guardian of the estate of a minor, of the guardian appointed in another State, upon the filing of a transcript showing such appointment there, the court will not take judicial notice of laws of the sister State by which a guardian there appointed becomes guardian of both the person and estate; but, in the absence of proof of such laws, will presume them the same as those of Texas. (Pp. 213, 214.)

**2. Same—Foreign Guardian.**

Tested by the laws of Texas (Revised Statutes, articles 2576, 2577, 2590, 2598-2600, 2602, 2612-2628, 2631-2634), presumed to be in force in a sister State in the absence of proof, an appointment by the courts of Kentucky, as guardian, generally, of a minor will not be taken as creating a guardianship of the estate; nor will such foreign guardian be presumed legally qualified on executing a bond in no named sum, our own laws requiring bond in double the value of the property. (Pp. 214, 216.)

QUESTION CERTIFIED from the Court of Civil Appeals for the Second District, in an appeal from Cooke County.

*Green & Hayworth*, for appellant.—In all applications for letters of guardianship, it is incumbent upon the applicant to show whether his application is for letters of guardianship upon the estate or person, and to show the kind and character of the estate, and to show the jurisdiction of the court and the necessity for guardianship upon the estate. Rev. Stats., arts. 2587, 2589, 2590, 2596.

In order to show the court the necessity of a guardianship upon an estate, it must be affirmatively shown that the court has jurisdiction of the estate; and there can be no different rules for nonresident guardians, and they must show whether they want to be guardians of the person or estate. Kahn v. Israelson, 62 Texas, 221; Rev. Stats., arts. 2621, 2622, 2623; Munday v. Baldwin, 79 Ky., 121; Grimmett v. Witherington, 16 Ark., 377; Freem. on Judg., secs. 571, 572; Kentucky Stats., sec. 2027.

A judgment of another State when offered in evidence ought to be shown to be valid. If it would not be valid if rendered in this State, where it is offered in evidence, the party who relies upon it must show that it is valid according to the law of the State within whose jurisdiction it was pronounced, and foreign laws must be proved as other facts. Martin v. Payne, 11 Texas, 292-295; Sadler v. Anderson, 17 Texas, 246; Franks v. Hancock, 1 Posey U. C., 554; Hanley v. Donoghue, 116 U. S., 1; Freem. on Judg., sec. 605.

*Robert E. Cofer*, for appellee.—Before presenting our reasons for the sufficiency of this record, we desire to notice the question of judicial notice discussed in the opinion of the Court of Civil Appeals. Section 2032 of the Kentucky statutes plainly provides that a guardian shall have the custody of the ward and the possession of his estate. There

the law provides but for a single guardian to perform the functions of both guardian of the person and guardian of the estate. If this court can take judicial knowledge of the Kentucky law, then the question certified is easily disposed of. While it is well established that as a general rule the laws of a sister State must be proved and can not be judicially noticed, yet an important qualification has been engrafted by some courts upon this rule to the effect that in cases like this, when the record of a sister State is the foundation of an action in another State, in such case the laws of the State from which the record comes will be taken notice of judicially in order to determine what faith and credit should be given to such record. Henry v. Allen, 82 Texas, 35; State v. Hinchman, 27 Pa. St., 483; 13 Am. and Eng. Enc. of Law, 2 ed., 1059; Note in 11 Am. Dec., p. 782. It is true that the case of State v. Hinchman, supra, has been criticised by the Supreme Court of the United States in Hanley v. Donoghue, 116 United States, 1. However, this was in 1885, and since then, in 1892, Chief Justice Stayton, speaking for this court in Henry v. Allen, supra, has approved the rule laid down, that in cases such as this one the laws of a sister State will be judicially noticed. It is therefore respectfully urged that Henry v. Allen ought to be followed by this court, and that the Kentucky law ought to be looked to in construing the record from the Kentucky court. We do not think it fair to this court to accept the suggestion of the Court of Civil Appeals that this court in deciding Henry v. Allen overlooked the Hanley case. We prefer to accept the decision as we find it.

The case of Hanley v. Donoghue does not militate against the proposition that in Texas the courts will take judicial knowledge of the laws of a sister State, as was held in Henry v. Allen. The Supreme Court of the United States says in the Hanley case that it will take judicial knowledge of the laws of a sister State whenever, by the local law of the State, the highest State court takes such judicial knowledge. Since the Hanley case was decided in 1885, the Supreme Court of Texas decided Henry v. Allen in 1892. And as the highest State court of Texas has decided that Texas courts will take judicial knowledge of the laws of other States in causes of actions based upon the records of such other States, so it would follow under the Hanley decision that in a case from Texas the Supreme Court of the United States will follow the law as laid down by the highest Texas court, and on error that court would also take judicial knowledge of such laws of other States.

Should your honors feel disposed to recede from the position taken in Henry v. Allen, still it is earnestly insisted that a fair and reasonable construction of the Kentucky record will lead to the holding that said record shows Jacob Everman was appointed "guardian of the estate" without any reference to the Kentucky law, and judged on the presumption that the Kentucky law is the same as the Texas law.

In the first place the Kentucky record shows on its face, when construed in connection with the title of the cause, that Jacob Everman was appointed guardian of the estate of the minors. The caption of the said

record shows the title of the cause in which Jacob Everman was appointed guardian as follows: "In the Matter of the Estate of Marcus Gill, Deceased.—In the Bourbon County Court. In Probate. March Term, March 6, 1899."

The order of the Kentucky court recites that "Mrs. Mary Gill, widow of Marcus Gill, deceased, filed her waiver herein, and on motion it is ordered that Jacob Everman be and he is hereby appointed guardian of Maude Gill and Lizzie Gill, infants under the age of fourteen years, and heirs of Marcus Gill, deceased," etc. Wherein (i. e., in what cause) did Mrs. Gill file her waiver? Certainly "in the matter of the Estate of Marcus Gill, deceased." Nothing could be clearer than that on March 6, 1899, at its March term, the Bourbon County Court sitting in probate entered an order providing a guardian for Maude and Lizzie Gill, the heirs of Marcus Gill, on the waiver and motion of the mother, to take possession and charge of whatever property said heirs should be entitled to out of the estate of Marcus Gill, deceased. Does not this show that the court was appointing a "guardian of the estate" and was not considering "the guardianship of the persons" of the minors at all? The Court of Civil Appeals fails to consider the title of the cause as a part of the order of the court.

However, it is not necessary to consider the caption at all. The order standing alone and unaided is sufficient under the authorities. Jacob Everman is appointed guardian generally without the qualifying words "of the person" or "of the estate," or "of the person and estate." Then the question arises, what effect has the appointment of a guardian generally? Such a record has some effect and can not be held void and the court is bound to interpret it. Does it constitute Everman "guardian of the person" or "guardian of the estate?" The authorities do not say that an appointment of a guardian generally is to be construed as "guardian of the person." On the other hand, they hold that such a record will not give the guardian control over the ward's person, but will be construed to be limited to the "estate," where one of the parents is living. But in case both parents are dead, then a general appointment will be construed to be both over the person and the estate. Let me quote from 15 American and English Encyclopedia of Law, second edition, page 50, where all the authorities are collated: "A guardian appointed generally over an orphan child is guardian of both person and estate. But when the father is living, the appointment will be construed to be only over the estate." The authorities supporting the proposition are Wade v. Carpenter, 4 Iowa, 361; Burger v. Frakes, 67 Iowa, 460; Commonwealth v. Dugan, 2 Pa. Dist., 772; McDowell v. Bonner, 62 Miss., 278; Brooks v. Logan, 112 Ind., 183. I do not find any authorities to the contrary at all, and in the above States the laws provide for separate guardianships for the person and estate just as in Texas. The new work of Woerner on "The American Law of Guardianship" touches the point very briefly, but lays down the doctrine in conformity with the text of the American and English Encyclopedia of

Law, quoted above. Woerner cites the following authorities: Schouler on Dom. Rel., sec. 320; Tenbrook v. McColm, 12 N. J. L., 97; and Van Dorens v. Everitt, 5 N. J. L., 460, 462.

GAINES, CHIEF JUSTICE.—This case comes to us upon a certified question. The certificate is as follows:

"At our last term, the judgment in this case was reversed and the cause remanded for a new trial, but a motion for rehearing was filed and is now pending, and inasmuch as considerable doubt has arisen with some of us as to the correctness of our decision on the original hearing, we deem it advisable to certify to your honors for decision the main question involved in this motion; that is, whether or not the transcript set out in our original opinion filed June 16, 1900, showed that appellee had been appointed and qualified as the guardian of the estate of Maude and Lizzie Gill as provided in article 2753 of our Revised Statutes, to which opinion reference is made for statement of the case, and of the question certified, and it is ordered that the opinion, briefs, motion for rehearing and transcript accompany this certificate."

The following is the transcript to which reference is made in the certificate:

"In the Matter of the Estate of Marcus Gill, Deceased.—In the Bourbon County Court. In Probate, March Term, March 6, 1899.

"Transcript of the record in the above entitled cause, including waiver, order of guardian and guardian's bond, to wit:

"WAIVER.

"Hon. W. M. Purnell, J. B. C. C.                    Feby. 25, 1899.

"I hereby waive my right to qualify as guardian of my two children, Maude and Lizzie Gill, aged respectively 7 and 5 years, and request that my cousin, Jacob Everman, be permitted to qualify as such.

"MRS. MARY GILL.

"ORDER GUARDIAN.

"Mrs. Mary Gill, widow of Marcus Gill, deceased, filed her waiver herein, and on motion, it is ordered that Jacob Everman be and he is hereby appointed guardian of Maude Gill and Lizzie Gill, infants under the age of fourteen years and heirs of Marcus Gill, deceased. Wherefore, he took the oath required by law, and with D. L. Robbins and H. C. Gillespie, his sureties, executed bond to the Commonwealth of Kentucky conditioned agreeably to law.

"GUARDIAN'S BOND.

"The Commonwealth of Kentucky, Bourbon County Court:

"Whereas, Jacob Everman has been appointed by the County Court of Bourbon County and has qualified as guardian of Maude Gill and Lizzie Gill, infants under the age of fourteen years and heirs of Marcus Gill, deceased. Now we, Jacob Everman as principal and D. L. Rob-

bins and H. C. Gillespie, his sureties, do hereby covenant to and with the Commonwealth of Kentucky that the said Jacob Everman will faithfully discharge the trust of guardian to said minors in all respects as provided by law.

"Signed this 6th day of March, 1899.

"JACOB EVERMAN,

"D. L. ROBBINS,

"(U. S. Stamp 50 cts.)                "H. C. GILLESPIE."

The transcript is accompanied by the respective certificates of the clerk and judge of the court, as is required by the act of Congress and the statutes of this State.

Article 2753 of our Revised Statutes provides that "where a guardian and his ward are nonresidents, such guardian may file in the county court of any county a full and complete transcript from the records of a court of competent jurisdiction where he and his ward reside, showing that he has been appointed and has qualified as guardian of the estate of such ward; which said transcript shall be certified by the clerk of the court in which the proceedings were had under the seal of such court, if there be one, together with a certificate from the judge, chief justice, or presiding magistrate of such court, as the case may be, that the attestation to such transcript is in due form; and upon the filing of such transcript, the same may be recorded, and the guardian shall be entitled to receive letters of guardianship of the estate of such minor situated in this State, upon filing a bond with sureties, as in other cases, in double the amount of the estimated value of such estate." Clearly, under this provision, a nonresident applicant for letters of guardianship must show that he has been duly appointed and has duly qualified as guardian of the estate of the minor in some other State or country, and it is equally clear that the transcript from the County Court of Bourbon County, Kentucky, exhibited in evidence in this case, does not expressly show such appointment and qualification. But in order to maintain the affirmative of the question certified, it is contended, first, that under the laws of Kentucky a guardian appointed by the county court becomes guardian both of the person and estate of the ward, and that it being the judgment of a court of a sister State, we should take judicial knowledge of those laws; and, in the second place, that if this can not be done, the transcript is sufficient, even under our own laws, to show affirmatively, though impliedly, that the appointment and qualification was as guardian of the estate of the wards.

In support of the first proposition, we are cited to the case of State v. Hinchman, 27 Pennsylvania State, 483. The case is directly in point and supports the contention, and was followed by the Supreme Court of Rhode Island in the case of Paine v. Insurance Company, 11 Rhode Island, 411. The decisions in these cases proceed upon the theory that since the laws of the United States require the courts of a State to give

"full faith and credit" to the judicial proceedings of every other State, the courts will assume to know the laws of such other State so far as is necessary to ascertain the faith and credit due to such proceedings. But this is a question of the construction of a Federal law,—a question upon which the decision of the Supreme Court of the United States is of paramount authority, and that court has distinctly repudiated the doctrine of the Pennsylvania case. Hanley v. Donoghue, 116 U. S., 1; Railway v. Ferry Co., 119 U. S., 615. Not only this, but our own court has decided the point adversely to the contention of appellee's counsel. Porcheler v. Bronson, 50 Texas, 555. The case of Henry v. Allen, 82 Texas, 35, does not hold the contrary. The ruling there was, in effect, that the court would presume that the special judge before whom the case was tried in another State was regularly qualified to try the cause, and that it was not necessary to plead and prove the laws of Arkansas authorizing his appointment. It is true that the court say: "Under the general averments of the petition, such proof was admissible, and it has been held that in such cases a court trying a cause based on the judgment of a sister State, authenticated in accordance with the act of Congress, would take judicial notice of the laws of the State in which the judgment was rendered" (citing State v. Hinchman, supra); but it is clear that the holding in the case cited is neither approved nor disapproved. We conclude that the general rule, which is well established in this court, applies in this case, and that in the absence of evidence as to the laws of Kentucky, we must presume that the laws of that State in relation to the appointment and qualification of guardians are the same as the laws of Texas.

Tested by the statutes of this State, does the transcript of the proceeding in the County Court of Bourbon County, Kentucky, show that the appellant was duly appointed and had duly qualified as guardian of the estates of the minors, Maude Gill and Lizzie Gill?

Our statutes in relation to guardians are found in title 51 of our Revised Statutes and are contained in consecutive articles from article 2550 to article 2800, inclusive. Article 2750 provides that where an application has been filed for the appointment of a guardian of a minor, a citation shall issue which shall show, among other things, that the application is for the guardianship of the person or of the estate, or of both.

Article 2576 declares that where the parents live together the father is the natural guardian of the person of the minor and is entitled to be appointed guardian of his estate. In case they do not live together, by article 2576 it is declared that their rights are equal. In case of the death of either, the survivor is the guardian of the person and is entitled to be appointed guardian of the estate. Art. 2577. Article 2589 prescribes that "only one guardian can be appointed of the person or estate; but one person may be appointed guardian of the person and another of the estate whenever the court shall be satisfied that it will be for the advantage of the ward to do so. Nothing in this article shall be

held to prohibit the joint appointment of husband and wife." By article 2590 it is provided that "the order of the court appointing a guardian shall be entered upon the minutes of the court and shall specify" (among other things) "3, whether the guardian is of the person or of the estate or both of the person and estate of such ward." Article 2598 prescribes that "the guardian shall take an oath faithfully to discharge the duties of guardian of the person (or of the estate, or of the person and estate, as the case may be) of the ward, according to law," etc. The bond of the guardian of the person must be in an amount to be fixed by the court not exceeding $1000, and is to be conditioned that he will faithfully perform the duties of guardian of the person of the ward. Art. 2599. The bond of the guardian of the estate is to be in double the estimated value of the property of the ward and is to be conditioned faithfully to perform the duties of guardian of the estate of the ward. Art. 2600. "Where the same person is appointed guardian of both the person and estate of a ward, only one bond shall be given by such guardian, varying the form thereof to suit the case." Art. 2602. Articles 2612 to 2620 prescribe the duties of the guardian of the estate with reference to the inventory and appraisement of the estate and the list of claims. Articles 2621 and 2622 define the powers and duties of the guardian of the person, and article 2623 and article 2625 to 2628, inclusive, the powers and duties of the guardian of the estate. Article 2624 provides: "The guardian of both person and estate has all the rights and powers and shall perform all the duties of the guardian of the person and of the guardian of the estate." Articles 2631 to 2734, inclusive, except article 2683, contain more specific provisions of the powers, duties and liabilities of the guardian of the estate in relation to such estate. Article 2683 makes it the duty of the guardian of the person to return to the court annually an account of his expenditures for the education and maintenance of his ward.

These provisions manifest the purpose of the Legislature to make the guardianship of the person of a minor and the guardianship of his estate distinct trusts,—as distinct as if the person to whom the trust in the one case may be confided is called the guardian of the person, and, in the other, the trustee of the estate. There is nothing in our statutes to indicate that it was contemplated that a person might be appointed simply as guardian of a minor with control both over his person and his estate. The powers, duties, and liabilities of the respective trusts may be combined in the same person but only by a specific appointment as guardian of the person and also as guardian of the estate, and by qualification, by oath and bond applicable to both capacities.

Clearly the order shown by the transcript in this case does not comply with our laws, which we are required to presume are the same as the laws of Kentucky. It does not specify that the guardian is appointed either over the person or estate. Nor does it say that he is appointed over both. The appointment being general, it may lead us to suspect that it was intended to be an appointment over both; but this is not sufficient.

The waiver by the mother of her right to the appointment is as applicable to the guardianship of the person as to the guardianship of the estate. The title of the proceeding, "In Matter of the Estate of Marcus Gill, Deceased," throws no light upon the question. Marcus Gill appears to have been the father of the minors. The estate of these children may have proceeded from his estate, yet we are at a loss to see the propriety of appointing a guardian of his children in a proceeding pertaining to the settlement of his estate. Under our laws, by his will he might have nominated a guardian of his children, but it does not appear in this case that he ever made such nomination. We conclude that the transcript does not show that the appellant was appointed guardian of the estates of the minors. And again, if so appointed, we are of opinion that it does not appear from the transcript that he was ever legally qualified. We have seen that the guardian of the estate of a minor must give bond in a fixed sum, that is, in double the estimated value thereof. The bond in this case does not name any sum, and we think, therefore, if such a bond had been presented to a county judge in this State, it would have been his duty to reject it.

Whether, if such a bond had been accepted and the guardian had taken charge of and managed the ward's estate under it, it would have been binding upon him and his sureties, is a question not before us and one upon which we express no opinion.

We answer the question certified in the negative.