William Joseph SCHACHT, Appellant,

v.

Marguerite Eileen SCHACHT, Appellee.

No. 17177.

Court of Civil Appeals of Texas.

Dallas.

Nov. 29, 1968.

Hugh O. Mussina, Dallas, for appellant.

Michael Lowenberg, of Akin, Gump, Strauss, Hauer & Feld, Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

The sole question presented by this appeal is the validity *vel non* of the trial court's decree wherein the purported marriage between appellant and appellee was annulled and held for naught.

Appellee Marguerite Eileen Schacht brought this action against appellant William Joseph Schacht alleging that on January 19, 1963 she had, in good faith, entered

into what she believed to be a valid ceremonial marriage to William in the State of New York and had continued to live with him as his wife until September 25, 1967. She alleged the necessary residential requirements in Texas and sought a divorce based upon grounds of cruelty and harsh treatment. In Count 2 of her petition she alleged that the marriage should be annulled for the reason that at the time of her ceremonial marriage to William he was legally incapable of entering into a valid marriage with her because he had previously married and was still married to another woman and that such prior valid subsisting marriage constituted an insuperable impediment to William's entering into a lawful marriage with her. She also charged that William had represented to her that he was free to marry her and had previously obtained a valid divorce from his first wife and that relying upon such representations she entered into said ceremonial marriage and lived with him as his wife until the date of separation. She alleged that such representation was false at the time it was made but that she did not know of its falsity until after she had separated from William. Appellant answered these charges with a general denial. The case proceeded to trial before the court and a jury and at the conclusion of all of the evidence the trial court, upon motion, withdrew the case from the jury and rendered judgment annulling the marriage relationship between Marguerite and William.

■ William appeals and in his only point of error assails the judgment as being illegal because the trial court erred in withdrawing the case from the jury and rendering judgment, thereby holding, as a matter of law, that Marguerite had sustained her burden of proving that the prior marriage had not been legally dissolved. The point requires us to carefully review the record to determine whether there was any evidence of probative force from which the jury could have found any fact issue in favor of appellant. In doing so we must consider only the evidence and the inferences therefrom which support appellant's position and reject that evidence and those inferences which are contrary thereto. Shepard v. Ray, 432 S.W.2d 178 (Tex.Civ. App., Dallas 1968), and cases therein cited.

The relevant testimony presented may be summarized, as follows:

William married Grace Schacht in a religious ceremony in Ossining, New York, on December 27, 1942 and as a result of that marriage two children were born, a daughter and a son. William admitted that in September 1950 he abandoned his wife Grace and his two children and has not seen or lived with any of them since that time. William also admitted that either in 1955 or 1956 he married Bunny Christmas in Durant, Oklahoma and later divorced her, about 1961, in Dallas, Texas. William stated that his first marriage to Grace was terminated by divorce in 1954 or 1955 in the City of Juarez, State of Chihuahua, Republic of Mexico. He admitted that prior to the time he obtained a divorce in Mexico he did not obtain any consent in writing from Grace to the Mexican divorce; that he has no recollection that he ever served his wife Grace with any notice, citation, process or other legal papers of any kind from any court in the Republic of Mexico with respect to the divorce proceedings instituted by him; that he never obtained a signed power of attorney from Grace in connection with the attempt to get a Mexican divorce; that he has no recollection that he did or did not hire an attorney to represent his wife Grace in the Mexican divorce proceedings. William testified that before going to Juarez, Mexico he was living in Dallas; that he went to El Paso to do a job there but that he lived across the river in Juarez. When asked about how long he lived at Juarez and the reason he lived there he testified, in answer to questions from his own counsel:

"Q How long did you say you lived in Juarez?

A I can't state exactly because, I don't believe it was quite six months, but

I am not certain of the time because the work we had, they had discontinued to go any further with and there was no point in—I couldn't make a living any more down there.

Q I see. The job terminated?

A Yes, sir.

Q Was this the reason you left?

A Yes, sir.

Q Why did you go down there [referring to El Paso] in the first place?

A Because of that main account that I had.

Q And why did you live in Mexico?

A To get my divorce.

Q To get your divorce?

A Yes, sir."

William said that he had hired a lawyer in Dallas who had, in turn, arranged for his Juarez, Mexico lawyer to proceed with the divorce proceedings at that place; that one day he was called to come to court in Juarez, and that he went before some judge and testified, through an interpreter, concerning the facts required for divorce. He did not understand any of the proceedings which went on in the Mexican language. His wife Grace was not present and took no part in the proceedings. William testified that he had had contacts with Grace from time to time; that she had written him a letter and had telephoned him. He said that he had received pictures of his children addressed to his business address in Dallas and that he did not consider it was a secret where he was located or that he was hiding out from Grace. William did not produce a certified copy of the Mexican decree but merely testified that he had obtained one.

On January 19, 1963 William entered into a marriage ceremony with Marguerite in the State of New York, and the two lived together and held themselves out as husband and wife until September 25, 1967 when they separated and have not lived together since that time. Marguerite testified that prior to the marriage William told her of his prior marriages but said that he had been divorced from each of them. She believed this or she would not have entered into the marriage with William.

Grace Schacht testified that if William ever obtained a divorce from her in Mexico she did not know anything about it. She said that no service of citation or any process was ever served on her or any notice given to her of the pendency of such divorce action in Mexico, nor was she ever afforded an opportunity to appear and defend such a divorce action, if one was ever filed. She said that she did not ever in writing or otherwise consent to the institution or maintenance of such a divorce action in Mexico; that she made no appearance in such action nor was she represented by any attorney in the divorce proceedings at Juarez. She said that she instituted divorce proceedings against William in the New York courts on October 31, 1967 but such action had not become final. At all material times Grace remained a resident of New York and continued to support the two children who had admittedly been abandoned by William. She was unable to file suit for divorce against William prior to 1967 because it was only then that the State of New York amended its domestic relations laws to permit a divorce on the ground of abandonment.

The trial court, in response to requests from appellant's attorney, filed findings of fact and conclusions of law. In these findings the court found the facts, as stated and summarized above, and concluded that based upon such facts William had not become a resident citizen, or domiciliary, of Juarez, State of Chihuahua, Mexico, or of any other city or state of Mexico, during the period of time from September 1950, when he abandoned his wife and two children, to January 19, 1963, when he purported to marry Marguerite. The court further concluded that if William ever obtained a Mexican judgment purporting to

be a decree of divorce from Grace that such judgment was not one which would be recognized by the laws of the State of New York as a valid decree nor would it be recognized by the laws of the State of Texas as a valid decree. The court concluded that William was legally married to Grace at the time he purported to marry Marguerite and because of such impediment the subsequent marriage was unlawful, void, and of no effect.

In the case of Simpson v. Simpson, 380 S.W.2d 855 (Tex.Civ.App., Dallas 1964, writ ref'd n. r. e.), we had occasion to review and discuss extensively the law governing the issues here being considered. These rules may be succinctly stated:

■■■ (1) A ceremonial marriage entered into in accordance with legal form will raise the presumption, or inference of its legality. One of the strongest presumptions of law is that a marriage, once being shown, is valid.

■■■ (2) Where there is proof of a second marriage by a party to a prior marriage, and a question is presented as to whether the presumption of validity will attach to the second marriage, the generally accepted view is that a second marriage will be presumed to be valid and that such presumption is stronger than and overcomes the presumption of continuance of the prior marriage. 38 Tex.Jur.2d, § 44, pp. 89–91; 14 A.L.R.2d 10–11; Texas Employers' Ins. Ass'n v. Elder, 155 Tex. 27, 282 S.W.2d 371 (1955); Watson v. Todd, 322 S.W.2d 422 (Tex.Civ.App., Fort Worth 1959). The basis for this legal presumption is a well-established one, founded in the principle that the law will presume morality and innocence rather than immorality and guilt. Nixon v. Wichita Land & Cattle Co., 84 Tex. 408, 19 S.W. 560 (1892); Adams v. Wm. Cameron & Co., 161 S.W. 417, 420 (Tex.Civ.App., Texarkana 1913).

■■ (3) However, such a presumption, though strong as it may be, is a rebuttable one. Nixon v. Wichita Land & Cattle Co.,

supra; Kinney v. Tri-State Telephone Co., 222 S.W. 227 (Tex.Comm'n App.1920).

(4) The legal presumption of validity of a second marriage must prevail until rebutted by evidence which negatives the effective operation of every possible means by which a dissolution of the prior marriage could have taken place. Hudspeth v. Hudspeth, 206 S.W.2d 863 (Tex.Civ.App., Amarillo 1947, writ ref'd n. r. e.); Holman v. Holman, 288 S.W. 413 (Tex.Comm'n App.1926); Texas Employers' Ins. Ass'n v. Gomez, 313 S.W.2d 956 (Tex.Civ.App., Eastland 1958).

■■ (5) However, it has been ruled, with equal force, that in order to rebut the presumption of legality of the second marriage such need not be established absolutely or to a moral certainty, the plaintiff only being required to introduce sufficient evidence, standing alone, to negative such facts. Hudspeth v. Hudspeth, supra; Dockery v. Brown, 209 S.W.2d 801 (Tex. Civ.App., El Paso 1947); Woods v. Hardware Mut. Casualty Co., 141 S.W.2d 972 (Tex.Civ.App., Austin 1940).

■■ Appellee concedes that the burden of proof to establish the validity of the first marriage because of its non-dissolution rested upon her. She contends that she has fulfilled her legal obligation by establishing by competent evidence that the prior marriage was not dissolved, as a matter of law. Accordingly, she argues that the trial court could not have submitted any issue of fact to the jury and was correct in rendering judgment.

Being guided by the above landmark rules of law we have carefully considered the entire record in this case and have concluded, and so hold, that appellee did sustain her burden by demonstrating, as a matter of law, that the prior marriage to Grace had not been legally dissolved. A legal impediment being clearly demonstrated, the subsequent marriage was wholly void.

■ In reviewing the facts of this case we must do so in the light of applicable Texas law and not the law of Mexico. No effort was made to prove the provisions of the law of Mexico relative to divorce action. Absent such, the presumption arises that the laws of the other jurisdiction are the same as those of Texas. Bradshaw v. Mayfield, 18 Tex. 21 (1856); Green v. Rugely, 23 Tex. 539 (1859); Gill v. Everman, 94 Tex. 209, 59 S.W. 531 (1900); Ross v. Beall, 215 S.W.2d 225, 226 (Tex. Civ.App., Texarkana 1948); 21 Tex.Jur.2d, § 427, p. 57.

■ Testing the facts which are undisputed in this record in the light of the applicable Texas divorce statutes, appellant could not and did not legally obtain a divorce from his first wife. This, for the simple reason that he admittedly did not establish legal residence in Mexico, only remaining there less than six months. Art. 4631, Vernon's Ann.Civ.St. Moreover, the testimony, viewed in a light most favorable to appellant, reveals that he had been in contact with his first wife, Grace, in New York from time to time and therefore knew, or should have known, where she could be reached and served with citation in the divorce action. Accordingly, the provisions of Rule 109, Texas Rules of Civil Procedure, relating to service by publication of a nonresident defendant in a divorce action, were not available to appellant since he could not have made the necessary affidavit to justify the issuance of such character of citation. It is without dispute that Grace was not actually served with any type of notice or process in connection with the divorce action; that she did not consent thereto; that she was not a resident of Mexico; and that she was not represented in any form or manner in that action. As a matter of fact, she was wholly unaware of any such action as evidenced by the fact that she herself instituted suit for divorce against William

as soon as she could legally do so in New York. We hold that the Mexican divorce obtained by William was void. Risch v. Risch, 395 S.W.2d 709 (Tex.Civ.App., Houston 1965).

■ We do not think that the rule of law with regard to full faith and credit being given by one state to a judgment entered in another state is applicable under the factual situation here presented. The "Full Faith and Credit" clause of the Constitution of the United States, Art. 4, Section 1, does not require that binding effect and validity be given a judgment of a foreign country such as Mexico, more especially where such judgments are shown to be invalid. Liverpool & London & Globe Ins. Co. v. Lummus Cotton Gin Sales Co., 6 S.W.2d 728 (Tex.Com.App., 1928); Ross v. Beall, 215 S.W.2d 225 (Tex. Civ.App., Texarkana 1948). Notwithstanding the Full Faith and Credit clause of the Constitution domicile in the foreign state may be inquired into. 21 Tex.Jur.2d, § 424, p. 51; Callicoatte v. Callicoatte, 324 S.W.2d 81 (Tex.Civ.App., Waco 1959, writ ref'd n. r. e.). In the Callicoatte case the husband testified that he had left Texas and gone to Nevada for the purpose of filing a divorce suit. The court upheld a finding that no Nevada domicile had ever existed. Here, appellant stated that he went to Mexico "to get my divorce." Under all of these undisputed facts the Mexican court was without jurisdiction to render judgment entitled to recognition in the courts of Texas.

There being no evidence of probative force of any fact to go to a jury and appellee having fulfilled her burden, as required by law, of establishing the legal impediment to her mariage, the trial court was correct in decreeing annullment.

The judgment of the trial court is affirmed.